UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

       Plaintiff,                           Case No. 23-cr-20524

v.

                                       HON. MARK A. GOLDSMITH

KASARAS KEMP,

       Defendant.
_____/

## OPINION & ORDER
## DENYING DEFENDANT'S MOTION TO DISMISS INDICTMENT (Dkt. 19)

Defendant Kasaras Kemp is charged with being a felon in possession of a firearm under 18 U.S.C. § 922(g)(1). See Indictment (Dkt. 11). Kemp moves to dismiss the felon-in-possession charge, arguing that § 922(g)(1) is unconstitutional under the Second Amendment (Dkt. 19). For the reasons that follow, the Court denies Kemp's motion.[1]

### I. BACKGROUND

The felon-in-possession charge stems from Kemp's alleged possession of a semiautomatic pistol. Resp. to Mot. at 4. Officers received calls that an individual was playing with a gun in front of a residential address. Id. After responding officers approached Kemp—who allegedly matched the description provided by the caller—he fled to a nearby backyard where he was apprehended. Id. at 5. The officers retrieved the gun from Kemp's right pant leg. Id.

The Government submits that Kemp has several prior convictions, which include felony fleeing from police officers, felony assault, and felony weapons possession. Id. at 5–6. Kemp is charged with violating 18 U.S.C. § 922(g)(1), see Indictment, which makes it "unlawful for any

---

[1] The Court held a hearing on Kemp's motion to dismiss on January 17, 2024. In addition to Kemp's motion, the briefing includes the Government's response (Dkt. 20) and Kemp's reply (Dkt. 22).

person" "who has been convicted in any court of [] a crime punishable by imprisonment for a term exceeding one year . . . to . . . possess in or affecting commerce[] any firearm or ammunition . . . !" § 922(g)(1). Kemp argues that § 922(g)(1) violates the Second Amendment under the analysis set forth by the United States Supreme Court in New York State Rifle & Pistol Ass'n, Inc. v. Bruen, 142 S. Ct. 2111 (2022).

## II. ANALYSIS

This Court has previously considered and rejected the same argument that Kemp raises in his instant motion, namely, that § 922(g)(1) is unconstitutional under the Second Amendment. See United States v. Smith, No. 22-cr-20351, 2023 WL 2215779 at *2 (E.D. Mich. Feb. 24, 2023) (slip copy) (denying defendant's motion to dismiss and concluding that §922(g)(1) was not unconstitutional under Bruen). For the reasons explained in Smith and set forth below, the Court denies Kemp's motion to dismiss.

The Second Amendment states: "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. Const. amend. II. Under Bruen, "[w]hen the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct. The government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation." Bruen, 142 S. Ct. at 2129–2130.

Before Bruen, there was no question that Congress could disallow felons from possessing firearms without violating the Constitution. See District of Columbia v. Heller, 554 U.S. 570, 626 (2008) ("[N]othing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons . . . ."); McDonald v. City of Chicago, 561 U.S. 742, 786 (2010) ("repeat[ing] th[is] assurance[]"). To the extent that these Supreme Court comments

2

constitute dicta, this Court is nonetheless "obligated to follow" dicta. A.C.L.U. of Kentucky v. McCreary Cnty., 607 F.3d 439, 447 (6th Cir. 2010) (punctuation modified).[2]

Bruen, which found that a state could not require applicants for unrestricted handgun licenses to demonstrate a special need for self-protection, does not upset the long-established understanding that § 922(g)(1) is constitutional. In its opening sentence, the majority opinion in Bruen reaffirms the Second and Fourteenth Amendment rights of "ordinary, law-abiding citizen[s]" recognized in Heller and McDonald. 142 S. Ct. at 2122 (emphasis added). The second sentence, too, refers to the rights of "ordinary, law-abiding citizens." Id. The majority opinion goes on to couch its holding in the context of "law-abiding" citizens an additional nine times. See id. at 2125–2156.

The concurrences of justices who joined this opinion are more explicit. Justices Kavanaugh and Roberts reassert that "'[n]othing in [Bruen] should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons . . . .'" Id. at 2162 (Kavanaugh, J., concurring) (quoting Heller, 554 U.S. at 626 and McDonald, 561 U.S. at 786). Justice Alito emphasizes that Bruen does not "disturb[] anything that we said in Heller or McDonald . . . about restrictions that may be imposed on the possession or carrying of guns," id. at 2157 (Alito, J., concurring), and he reiterates that Bruen's holding is limited to the rights of "law-abiding people," id. at 2159 (Alito, J., concurring).

Given these pronouncements, it is difficult to see how the Bruen analysis could mandate a finding that a felon-in-possession prohibition violates the Constitution. Indeed, as this Court

---

[2] Prior to Bruen, and not by way of dicta, the Sixth Circuit held that prohibitions on felons' possession of firearms do not violate the Second Amendment. See United States v. Carey, 602 F.3d 738, 741 (6th Cir. 2010). Even though the Supreme Court's mode of analysis for Second Amendment challenges has changed since the issuance of Carey, this Court is not free to ignore binding precedent. See Salmi v. Sec'y of Health & Hum. Servs., 774 F.2d 685, 689 (6th Cir. 1985).

proceeds below through the considerations identified in Bruen, it finds Kemp's position unmeritorious.

### A. Whether Second Amendment's Plain Text Covers Kemp's Conduct

Kemp argues that the plain text of the Second Amendment covers his conduct, as the Second Amendment applies to "the people," which "'unambiguously refers to all members of the political community, not an unspecified subset.'" Mot. at 15 (quoting Heller, 554 U.S. at 580).

It is not clear that Kemp—having broken the law—is still a member of the "community" discussed by the court in Heller. The Government submits that the protections of the Second Amendment do not apply to felons. See Resp. at 15. Bruen states that "ordinary, law-abiding, adult citizens [] are part of 'the people' whom the Second Amendment protects." 142 S. Ct. 2111 at 2134 (citing Heller, 554 U.S. at 580). Thus, at the very least, "there is some doubt" as to whether the prohibitions in § 922(g) are "textually covered by the Second Amendment, insofar as it has been interpreted to guarantee the right to keep and bear arms to ordinary, law-abiding, responsible citizens concerned with self-defense." United States v. Daniels, No. 1:22-cr-58-1, 2022 WL 2654232, at *2 (S.D. Miss. July 8, 2022) (finding that § 922(g)(3)'s prohibition on firearm possession for unlawful users and addicts of controlled substances survived Bruen analysis).

Given the clear limitation of Bruen's holding to law-abiding citizens, the Court finds this position sufficient to defeat Kemp's argument. As the court in United States v. Ingram explained:

> By distinguishing non-law-abiding citizens from law-abiding ones, the dicta in Heller and McDonald clarifies [sic] the bounds of the plain text of the Second Amendment. This, coupled with the majority's focus in Bruen on the Second Amendment rights of "law-abiding citizens" throughout the opinion convinces this Court that the Supreme Court would conclude that these statutes fail to infringe on any Second Amendment rights.

No. CR 0:18-557, 2022 WL 3691350, at *3 (D.S.C. Aug. 25, 2022) (denying motion to dismiss § 922(g) and § 922(c) charges on Second Amendment grounds).

4

Having been convicted of felonies, Kemp is not an "ordinary, law-abiding" citizen. Bruen, 142 S. Ct. 2111 at 2134. Because the plain text of the Second Amendment—informed by the Supreme Court's discussion of the Second Amendment's scope—does not cover Kemp, the Court finds his motion without merit.

Even if the Court were to assume that the Second Amendment applies to Kemp, he cannot survive the next prong of the Bruen analysis.

**B. Whether Felon-in-Possession Prohibition is Consistent with Historical Tradition of Firearm Regulation**

To carry its burden of demonstrating that § 922(g)(1) is consistent with a historical tradition of firearm regulation, the Government may present "historical precedent from before, during, and even after the founding [that] evinces a comparable tradition of regulation." Bruen, 142 S. Ct. 2111 at 2131–2132 (punctuation modified). Bruen emphasizes that "'[c]onstitutional rights are enshrined with the scope they were understood to have when the people adopted them,'" id. at 2136 (quoting Heller, 554 U.S. at 634–635) (emphasis in Bruen), and notes that the Second and Fourteenth Amendments were adopted in 1791 and 1868, respectively, id.

Kemp argues that the Government cannot demonstrate that felon-in-possession prohibitions are consistent with any founding-era regulatory tradition. He notes that he is unaware of analogous prohibitions before Congress passed the Federal Firearms Act in 1938, see Mot. at 15–16 (citing United States v. Skoien, 614 F.3d 638, 640 (7th Cir. 2010) (en banc)) and Federal Firearms Act, c. 850, § 2(f), 52 Stat. 1250, 1251 (1938)). Kemp further argues that § 922(g)(1) "bears little resemblance to laws in effect at the time the Second Amendment was ratified." Mot. at 16 (quoting N.R.A. v. A.T.F., 700 F.3d 185, 196 (5th Cir. 2012)). For its part, the Government relies on a number of authorities to argue that felons were historically excluded from the right to bear arms afforded by the Second Amendment. Resp. at 19–20 (citing United States v. Jackson, 69 F.4th 495, 502–506 (8th Cir. 2023) (concluding that "legislatures traditionally employed status-

5

based restrictions to disqualify categories of persons from possessing firearms" and that § 922(g)(1) falls within that historical tradition)).

Given the Supreme Court's direction on the constitutionality of felon-in-possession statutes discussed above, this Court does not consider extensive historical discussion essential to resolving Kemp's argument. The court in United States v. Price—after deciding that the plain text of the Second Amendment applied to a felon charged with possessing a firearm—did "not find it necessary to engage in the historical analysis test articulated in Bruen as to 18 U.S.C. § 922(g)(1)." No. 2:22-cr-00097, 2022 WL 6968457, at *8 (S.D.W. Va. Oct. 12, 2022) (finding § 922(g)(1) constitutional). Rather, the court was "convinced that the Supreme Court left generally undisturbed the regulatory framework that keeps firearms out of the hands of dangerous felons through its decision in Bruen by reaffirming and adhering to its reasoning in Heller and McDonald." Id.; see also United States v. King, No. 21-cr-255, 2022 WL 5240928, at *5 (S.D.N.Y. Oct. 6, 2022) (finding § 922(g)(1) constitutional based on Bruen, McDonald, and Heller without engaging in independent analysis of historical tradition).

Nonetheless, as several courts have observed, felon-in-possession prohibitions have sufficient grounding in historical tradition to withstand a challenge under Bruen. Daniels references a pre-Bruen survey of historical sources establishing that "§ 922(g)'s restriction on possession of firearms by felons . . . has a long and established history in English and American common law." 2022 WL 2654232, at *3 (citing United States v. Emerson, 270 F.3d 203, 226 n.21 (5th Cir. 2001) (compiling secondary sources reflecting that "[c]olonial and English societies of the eighteenth century . . . have excluded . . . felons" from possessing firearms and that "the Founders [did not seem to] consider[] felons within the common law right to arms or [to] intend[] to confer any such right upon them") (punctuation modified)); see also United States v. Yancey, 621 F.3d 681, 684–685 (7th Cir. 2010) ("[M]ost scholars of the Second Amendment agree that the

6

right to bear arms was tied to the concept of a virtuous citizenry and that, accordingly, the government could disarm 'unvirtuous citizens.'").

The court in United States v. Nutter observed that the founding-era "historical record reflects significant regulation of firearms designed to ensure responsible and safe gun ownership." No. 2:21-cr-00142, 2022 WL 3718518, at *6 (S.D.W. Va. Aug. 29, 2022). In finding that the prohibition on possession of firearms by persons convicted of misdemeanor crimes of domestic violence under 18 U.S.C. §§ 922(g)(9) and 924(a)(2) did not violate the Second Amendment, the court reasoned that such a prohibition was in keeping with the Second Amendment's purpose and the history of keeping firearms out of the hands of dangerous people:

> The prohibition of possession of firearms by domestic violence misdemeanants, and other groups identified as dangerous, is supported by history. See, e.g., Lawrence Rosenthal, The Limits of Second Amendment Originalism and the Constitutional Case for Gun Control, 92 Wash. U.L. Rev. 1187, 1239 (2015) ("[H]istory suggests that when the legislature restricts the possession of firearms by discrete classes of individuals reasonably regarded as posing an elevated risk for firearms violence, prophylactic regulations of this character should be sustained."); Carlton F.W. Larson, Four Exceptions in Search of A Theory: District of Columbia v. Heller and Judicial Ipse Dixit, 60 Hastings L.J. 1371, 1377 (2009) (citing historical examples for the proposition that "any person viewed as potentially dangerous could be disarmed by the government without running afoul of the 'right to bear arms.'"); Glenn Harlan Reynolds, A Critical Guide to the Second Amendment, 62 Tenn. L. Rev. 461, 480 (1995) (application of the Second Amendment limited to "virtuous" citizens).

Id. at *7. A similar reading of history was expressed by Justice Barrett—as a judge on the Seventh Circuit—when she opined that "[h]istory . . . does support the proposition that the state can take the right to bear arms away from a category of people that it deems dangerous." Kanter v. Barr, 919 F.3d 437, 464 (7th Cir. 2019) (Barrett, J. dissenting).

Deciphering history is always a fraught enterprise—as demonstrated dramatically in the 5-to-4 disagreement in Heller as to whether the Second Amendment established a personal right to bear arms. And searching for an "American" tradition on gun regulation is even more challenging, given that well over half of the American population—including women, Black people, and

7

others—were excluded by law from political participation at the time of the Second Amendment's passage and for decades thereafter.

No matter how difficult the investigation of relevant Second Amendment history may be in other contexts, the conclusion is clear that disarming persons deemed dangerous has been grounded in the heartland of acceptable gun regulation since our Nation's founding. Ignoring this history would disregard the admonition of the Supreme Court that "while the Constitution protects against invasions of individual rights, it is not a suicide pact." Kennedy v. Mendoza-Martinez, 372 U.S. 144, 160 (1963). The prohibition on firearm possession by felons under § 922(g)(1) does not violate the Second Amendment.

Kemp correctly points out that several courts have reached a contrary conclusion, holding that the provision was unconstitutional as applied to the defendants in those cases. Mot. at 10–11 (citing Range v. Att'y Gen., 69 F.4th 96, 98–99, 106 (3d Cir. 2023) (en banc) (holding that § 922(g)(1) was unconstitutional as applied to defendant previously convicted of making a false statement); United States v. Bullock, 2023 WL 4232309 at *1 (S.D. Miss. June 28, 2023) (concluding that the government failed to meet its burden that § 922(g)(1) was unconstitutional as applied to defendant previously convicted of aggravated assault and manslaughter); United States v. Harper, No. 1:21-cr-0236, 2023 WL 5672311, at *13 (M.D. Pa. Sept. 1, 2023) (holding § 922(g)(1) unconstitutional as applied to defendant with 13 prior felony convictions); United States v. Quailes, No. 1:21-CR-0176, 2023 WL 5401733, at *1 (M.D. Pa. Aug. 22, 2023) (holding § 922(g)(1) unconstitutional as applied to defendant previously convicted of felony drug offenses).

But the cases cited by Kemp are both non-binding on this Court and represent "an outlier viewpoint—and one that this Court does not find persuasive in light of the weight of authority." United States v. Freeman, No. 23-20258, 2024 WL 348517, at *6–*7 (E.D. Mich. Jan. 30, 2024) (disagreeing with Range and denying defendant's facial and as-applied challenge to § 922(g)(1)) (punctuation modified). Indeed, as far as the Court is aware, every decision addressing this

question in this district has found that this statute survives <u>Bruen</u>. <u>See, e.g.</u>, <u>Freeman</u>, 2024 WL 348517, at *6–*7 (denying motion to dismiss § 922(g)(1) charge under <u>Bruen</u>); <u>United States v. Burrell</u>, No. 21-20395, 2022 WL 4096865, at *3 (E.D. Mich. Sept. 7, 2022) (denying motion to dismiss § 922(g)(1) charge under <u>Bruen</u> and observing that "substance" of motion was "unsound"); <u>United States v. Bluer</u>, No. 22-20557, 2023 WL 3309844, at *6 (E.D. Mich. May 8, 2023) ("[T]he Court agrees with the overwhelming consensus that Bruen is no barrier to a §922(g)(1) prosecution.").[3]

Consistent with weight of authorities from this district, the Court holds that the felon-in-possession charge against Kemp withstands constitutional scrutiny.

### III. CONCLUSION

For the reasons explained above, the Court denies Kemp's motion to dismiss (Dkt. 19).

SO ORDERED.

Dated: February 16, 2024　　　　　　　　　　s/Mark A. Goldsmith
　　　Detroit, Michigan　　　　　　　　　　　MARK A. GOLDSMITH
　　　　　　　　　　　　　　　　　　　　　　United States District Judge

---

[3] The Government lists additional cases in which courts in this district have rejected post-<u>Bruen</u> challenges to the constitutionality of § 922(g)(1). <u>See</u> Resp. at 12 n.1.